IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

KIM RENEA LYON, )
)
          Plaintiff, )
)
v. ) Case No. CIV-09-320-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
          Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Kim Renea Lyon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 16, 1958 and was 51 years old at the time of the ALJ's decision. Claimant obtained a GED and some college classes. Claimant has worked in the past as a telephone solicitor, customer service representative, and appointment clerk.

Claimant alleges an inability to work beginning September 17, 2001 due to limitations resulting from hepatitis B and C, emphysema, post traumatic stress disorder, bipolar disorder, multiple personality disorder, frontal lobe damage, schizophrenia, and memory loss.

## Procedural History

On April 5, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 31, 2008, an administrative hearing was held before ALJ Glenn A. Neel in McAlester, Oklahoma. On March 13, 2009, the ALJ issued an unfavorable decision on Claimant's application. On May 12, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual

functional capacity ("RFC") to perform her past relevant work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to obtain the opinion of a medical expert to determine her onset date; (2) reaching deficient findings on the severity of Claimant's impairments and RFC determination; and (3) finding Claimant could perform her past relevant work.

**Onset Date Determination**

Claimant was awarded SSI benefits as of April 1, 2006 due to her schizophrenia. (Tr. 62). Claimant's DIB benefits, however, were denied because Defendant determined insufficient evidence existed in the record to assess the severity of Claimant's impairments prior to December 31, 2003, which was her date of last insured. (Tr. 64).

In his decision, the ALJ found Claimant suffered from the severe impairment of degenerative joint disease of the lumbar spine post surgery. (Tr. 11). He concluded Claimant retained the RFC to perform sedentary work with the ability to lift and/or carry five pounds frequently and ten pounds occasionally, stand and/or walk two hours in an eight hour workday, and sit six hours in an eight hour workday. (Tr. 12).

With regard to Claimant's mental impairments, the ALJ noted

5

that

> There is simply no evidence that the claimant had a medically determinable mental impairment prior to her date of last insured of December 31, 2003. Although state agency consultants have since found the claimant to have significant mental limitations, they also stated that those limitations were not present at or prior to the date last insured.

(Tr. 13).

The evidence in the medical record from the time prior to Claimant's date of last insured is instructive as to the beginning of Claimant's mental impairment. On February 24, 1995, Claimant was admitted to a mental health facility on an emergency order of detention. She was admitted as an alcoholic, drinking up to three bottles of cough syrup per day on a daily basis. Claimant was holding a pistol to her head and pulling the trigger, threatened to harm her family and children, became combative with family members and police. Claimant told authorities her husband from whom she was separated had been stalking her, chasing her, and hitting her. She also stated that a drunken friend had held a gun to her head and she struggled with the friend. She admitted to drinking the cough medicine and to smoking marijuana on a daily basis. Claimant denied problems with sleep, mood, and appetite and denied suicidal thoughts. Claimant also denied any past psychiatric history, telling doctors "I'm not supposed to be here." (Tr. 340).

6

The staff physician, Dr. C.A. Dejecacion, found Claimant's appearance to be normal but rumpled, extremely cooperative and polite, alert and oriented, with intact memory, fine mood and expressive affect, coherent in her thinking, of average intelligence, with good abstract reasoning, and good theoretical judgment. She was found not to have a significant psychiatric history. She was diagnosed at Axis I: Alcohol intoxication. Alcohol and marijuana dependence; Axis II: Deferred; Axis III: History of pleurisy; Axis IV: Stressors - unemployed, separated; Axis V: Current GAF of 35 with highest GAF in the past year of 50. Her GAF was 51-60 at discharge. (Tr. 342-43).

On March 7, 1995, a Psychological Report was prepared by Linda J. Rodgers, M.A., L.P.C. The report states that Claimant "was referred for testing to determine personality characteristics and/or disorder, as well as to assist with diagnosis and treatment." (Tr. 349). Ms. Rodgers sets forth the factual scenario accounting for Claimant's presence in the institution. She then states that Claimant "agreed to complete the MMPI willingly. No deviant behavior was noted."

The results of the testing showed Claimant may be angry, argumentative, as well as resentful of any demands being placed on her. She may be suspicious of the motives of others and paranoid

7

features should be ruled out. She is usually able to control the expression of her hostility, but she may exhibit episodic angry outbursts. She may often express vague emotional and physical complaints, as well as reporting feelings of depression and nervousness. Substance abuse was noted. In response to stress, Claimant may exhibit outbursts of temper, as well as threats of punishment. She may have a long history of very poor interpersonal relationships. She may be difficult to interact with because of her hostile attitudes and behavior which leads to poor relationships. She may see herself as more sensitive than other people, as well as being concerned about what others think about her. (Tr. 350).

Ms. Rodgers concludes with the diagnosis at Axis I - Rule out dysthymia versus paranoid disorders, as well as psychoactive substance abuse disorder. Secondary on Axis I, schizophrenic paranoid disorders should be assessed further. Axis II - Appears to be mixed - paranoid personality disorder versus passive aggressive personality disorder versus borderline personality disorder. Ms. Rodgers concluded in stating, "[p]rognosis for treatment is poor due to the denial of personal responsibility for her problems." (Tr. 351).

Other medical records indicate Claimant was "doing very well."

8

(Tr. 173). When examined by Dr. Edward Shadeed in May of 2002, Claimant stated she wanted to begin looking for a job. He only restricted Claimant in her ability to twist, bend, and engage in heavy lifting. (Tr. 173).

On June 2, 2006, Claimant was evaluated by Dr. William Cooper with a chief complaint of "mental health." Dr. Cooper's report indicates Claimant was diagnosed with bipolar disorder in October of 2005. She was diagnosed with schizophrenia in March of 2006 and "still suffers from auditory hallucinations." (Tr. 293).

On June 14, 2006, Claimant was evaluated by Theresa Horton, Ph.D., a licensed psychologist. Dr. Horton found Claimant had been going to Northcare for mental health treatment since September of 2005. She received medication and counseling. Claimant stated she had been diagnosed with schizophrenia. (Tr. 300).

Claimant contends the ALJ should have consulted with a medical advisor to determine her onset date. "In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Soc. Sec. R. 83-20. In determining the onset date of a disability, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." Potter v.

Sec. of Health & Human Servs., 905 F.2d 1346,1348-49 (10th Cir. 1990). If the onset date of a disability must be inferred, the ALJ should consult a medical advisor. Soc. Sec. R. 83-20. The necessity to engage the services of a medical advisor, however, only arises if the medical evidence of onset is ambiguous. Blea v. Barnhart, 466 F.3d 903, 910 (10th Cir. 2006).

While it is often easier to determine the onset date to be the date of diagnosis, "only in the rarest of cases is a person's disabling condition diagnosed on the day it begins." McClellan v. Apfel, 2000 WL 433094, 9 (D. Kan.). This is particularly true of a mental impairment, which is often not diagnosed right away precisely because the impairment itself interferes with the claimant's awareness of the cause of her difficulties. Id. citing Morrison v. Bowen, 738 F.Supp. 1351 (D. Kan. 1987).

In this case, this Court is troubled by the report of Ms. Rodgers shortly after Claimant was committed to a mental health institution on an emergency order of detention. Ms. Rodgers, who would at the very least constitute an "other source" under the regulations, clearly suspects Claimant suffers paranoid disorders, in general, and schizophrenic paranoid disorders, in particular. (Tr. 351). These statements made after testing, Claimant's conduct which precipitated her detention, her statements made of apparent

paranoia, and the surrounding statements by mental health professionals concerning her level of mental acuity, creates an ambiguity in the medical record which requires the ALJ to consult with a medical advisor before definitively determining Claimant's onset date. On remand, the ALJ shall retain such an advisor and reassess his findings on Claimant's onset date.

### RFC Determination

Claimant contends the ALJ should have found she suffered from a severe mental impairment prior to the date of last insurance. Since Claimant's mental health prior to the DLI will be under scrutiny once again with the assistance of a medical advisor, the ALJ shall consider Claimant's mental state and potential disability on remand.

### Past Relevant Work

Claimant also asserts that she could not perform her past relevant work. The ALJ determined Claimant could perform her past relevant work as a telephone solicitor, customer service representative, and appointment clerk. (Tr. 15). This Court agrees with Claimant that the only one of these jobs which would have constituted substantial gainful activity ("SGA") was the customer service representative job because the remaining two jobs were not performed at the required income earnings level to

represent SGA. 20 C.F.R. § 404.1565(a). Claimant only performed the customer service representative job for a period of around six months. The job is classified as one which requires between six months and one year to learn. Soc. Sec. R. 00-4p; *Dictionary of Occupational Titles*, No. 239.362-014. On remand, the ALJ shall re-evaluate his findings at step four and ascertain whether any of Claimant's past jobs may be classified as SGA.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of August, 2011.

                                                KIMBERLY E. WEST
                                                UNITED STATES MAGISTRATE JUDGE